# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWARD J. KINSLOW, | § |
| | § |
| *Plaintiff*, | § |
| | § |
| *versus* | § CIVIL ACTION NO. 5:12-1541 |
| | § |
| CAROLYN W. COLVIN, | § |
| Acting Commissioner of | § |
| Social Security, | § |
| | § |
| *Defendant*. | § |

## REPORT AND RECOMMENDATION

Edward J. Kinslow ("Kinslow") seeks review of an adverse decision on his application for disability insurance benefits under the Social Security Act.

A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g).

### I. Background

In April 2007, Kinslow suffered a work-related injury while employed as a welder. (T. 190).[1]  He experienced pain and tingling in his neck, hands, and arms. (T. 190, 380). First, he underwent bilateral carpal tunnel release surgeries in March and June 2008. (T. 155, 162). Then, in March 2009, he had fusion surgery on his cervical spine (*i.e.,* C6-7). (*Id.*). In each instance, Kinslow

---

[1] "T." followed by a number refers to the page of the administrative record. (Dkt. No. 8).

reported no change in symptoms afterward. (T. 380). These subjective self-assessments are corroborated somewhat by observations of his treating neurosurgeon who observed that Kinslow continues to experience "diffuse myalgias" caused by "severe obesity" following his surgeries. (T. 149).

On July 17, 2009, Kinslow applied for social security disability insurance benefits, alleging disability commencing on April 6, 2007. (T. 11). Administrative law judge, John P. Ramos ("ALJ Ramos"), denied Kinslow's application. (T. 11-18). The Appeals Council declined review; Kinslow timely instituted this proceeding. (Dkt. No. 1).

## II. Commissioner's Decision

ALJ Ramos utilized a five-step sequential evaluation procedure prescribed by regulation and approved by courts as a fair and just way to determine disability applications in conformity with the Social Security Act.[2] He determined at Step 1 that Kinslow is not presently engaged in substantial gainful activity. At Step 2, he found that Kinslow has morbid obesity, degenerative disc disease of the cervical spine, and bilateral carpal tunnel syndrome, conditions that, separately and collectively, are "severe impairments." (T. 13). At Step 3, ALJ Ramos found that Kinslow's impairments, singly or in combination, do not meet or medically equal the Commissioner's listings of presumptively disabling mental and physical impairments.[3]

---

[2] The procedure is "sequential" in the sense that when a decision can be reached at an early step, remaining steps are not considered. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)). A full discussion of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

[3] The Commissioner publishes a series of listed impairments describing a variety of physical and mental conditions, indexed according to the body system affected. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). Listed impairments are presumptively disabling. *See* 20 C.F.R. § 404.1520(a)(4)(iii), (d).

Before Steps 4 and 5, ALJ Ramos made a predicate finding of "residual functional capacity."[4] He found that Kinslow's impairments so reduce his physical capacity for work-related activities that he now can work only at the light exertional level. (T. 14). His capacity for that work is further reduced by limitations prohibiting overhead lifting and a necessity to engage only occasionally in postural activities, fingering or other fine manipulative activities with either hand. (*Id.*).

Given this diminished work capacity, ALJ Ramos found that Kinslow can no longer perform his past relevant work as welder or auto supply store laborer. (T. 17). Kinslow thus carried his burden to prove a *prima facie* case of disability.[5]

The burden then shifted to the Commissioner to show at Step 5 that Kinslow can still perform alternative and available work.[6] ALJ Ramos undertook to satisfy this burden by consulting and relying on the Commissioner's Medical-Vocational Rules, commonly referred to as "the grids."[7] Based on Rule 202.18, ALJ Ramos determined that alternative jobs that Kinslow can perform do exist, and that a conclusion of "not disabled" is appropriate under the framework of that rule. (T. 17-18). Kinslow's claim, therefore, was denied.

---

[4] *See* definition and discussion in Section IV.*B., infra.*

[5] *See Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984).

[6] *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *see also DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998); *Berry*, 675 F.2d at 467; 20 C.F.R. § 404.1566.

[7] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. The Medical-Vocational Guidelines are a matrix of general findings—established by rule—as to whether work exists in the national economy that a person can perform. They "take into account a claimant's residual functional capacity, as well as her age, education, and work experience." *Calabrese v. Astrue*, 358 Fed. App'x 274, 276 & n. 1 (2d Cir. 2009) (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)).

### III. Points of Error

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, one must have ability to do substantially all of these activities, and stand or walk, off and on, for a total of approximately six hours of an eight-hour workday.[8]

When finding that Kinslow retains capacity for a limited range of this exertional category of work, ALJ Ramos discredited Kinslow's subjective testimony concerning intensity, persistence and limiting effects of his symptoms. And, while acknowledging that Kinslow's objective medical records contain a variety of opinions placing Kinslow's worker compensation disability from 0% to 100%, ALJ Ramos chose to accept only medical opinions expressed by two physicians, Daniel L. Carr, M.D. and Shehzad Ali, M.D., neither of whom actually treated Kinslow. (T. 17).

Dr. Carr, an orthopedic surgeon, examined Kinslow twice in connection with separate and unrelated state worker compensation proceedings at the behest of the insurance carrier. Dr. Carr opined that Kinslow can perform a "modified duty job" that does not involve (a) repetitive overhead lifting, (b) lifting more than 20 pounds overall or (c) repetitive forceful gripping. (T. 410).

---

[8] *See* 20 C.F.R. § 404.1567(b); SSR 83–10, TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK – THE MEDICAL-VOCATIONAL RULES OF APPENDIX 2, 1983 WL 31251, at *5–6 (SSA 1983)

Dr. Ali is a consultative examiner to whom Kinslow was referred by the state Division of Disability Determination in connection with Kinslow's claim for social security benefits. Dr. Ali opined that Kinslow has "moderate limitations to activities including driving, and sitting in front of the computer in lieu (*sic*) of history of neck pain as well as spinal fusion surgery." (T. 283).

Dr. Gerard Rodziewicz, M.D. performed a cervical diskectomy fusion and plating in 2009. Aside from noting that this surgery occurred, and that it was more difficult because of Kinslow's obesity, ALJ Ramos did not mention Dr. Rodziewicz's opinions expressed during the course of treatment. Dr. Rodziewicz opined that Kinslow was 100% disabled *temporarily* (T. 276-77), and has *permanent* "moderate" disability in the worker compensation context. (T. 330). Nor did ALJ Ramos obtain or request from Dr. Rodziewicz a treating medical source statement in the social security context containing opinions regarding Kinslow's post-surgery ability to perform specific physical functions associated with normal work activities.

Moreover, ALJ Ramos expressly *rejected* medical opinions from Charles M. Totero, M.D. (an orthopedic surgeon who examined Kinslow in the worker compensation proceedings), and Eric A. Tallarico, M.D. (a pain management specialist who examined Kinslow in the context of worker compensation proceedings). Dr. Totero opined that Kinslow had a "moderate" partial disability and specified that Kinslow was capable of performing restricted work duty with no lifting, pushing, or pulling of weights greater than 10 to 15 pounds. (T. 215). Dr. Tallarico opined that Kinslow had a 75% marked degree of impairment due to pain. (T. 397).

Disagreeing in all respects with ALJ Ramos's credibility choices, Kinslow proffers the following alleged errors stated verbatim:

(1) The residual functional capacity assessment is unsupported by substantial evidence;

(2) The ALJ did not apply the appropriate legal standards in assessing Plaintiff's credibility; and

(3) The ALJ erred when he failed to consult a vocational expert where plaintiff has significant non-exertional limitations.

(Dkt. No. 10, pp. 13, 19, 22).

Under this district's practice, the parties marshal their arguments through competing briefs.[9]

### IV. Discussion and Analysis

Although Kinslow's first point is *articulated* as a substantial evidence error, he *argues* that ALJ Ramos disregarded legal principles embodied in the Commissioner's implementing regulations and interpretive rulings and also in governing case law for evaluating medical opinions. He further argues that ALJ Ramos's residual functional capacity finding lacks substantial evidentiary support because it is based on bare medical findings without a medical advisor's assessment. Responding, the Commissioner argues that ALJ Ramos employed correct legal principles and that his factual findings are supported by substantial evidence. (Dkt. No. 12, pp. 5-17).

*A.    Duty to Develop a Full Record*

Within the penumbra of a court's narrow authority to review decisions of the Commissioner lies a threshold duty to determine whether administrative proceedings were conducted in accordance with the beneficent purposes of the Social Security Act. Thus, before district courts evaluate specific findings and conclusions, they first ensure that claimants received full and fair hearings. *See*

---

[9] *See* General Order #18 dated September 23, 2003 (superseding January 24, 2002 and September 19, 2001 general orders). (Dkt. No. 3).

*Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982); *accord Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990). This involves making a "searching investigation" of administrative records to ensure that administrative law judges protected claimants' rights. *See Robinson v. Secretary of Health & Human Servs.*, 733 F.2d 255, 258 (2d Cir. 1984).

What constitutes a full and fair hearing in the social security context is *ad hoc* because such administrative "disability determinations are investigatory, or inquisitorial, rather than adversarial." *Moran v. Astrue*, 569 F.3d 108, 112–13 (2d Cir. 2009) (internal quotation marks omitted). "Accordingly, an ALJ may not rely, as factfinders in adversarial proceedings customarily do, on the *absence* of probative evidence supporting the opinions of a claimant's expert, without making an affirmative effort to fill any gaps in the record before him." *Sanchez v. Barnhart*, 329 F. Supp.2d 445, 450 (S.D.N.Y. 2004) (emphasis in original) (internal quotation marks and citations omitted). Rather, "[i]t is the ALJ's duty to investigate and develop the facts and *develop the arguments both for and against the granting of benefits*."*Moran*, 569 F.3d at 112-13 (emphasis added, internal quotation marks omitted); *accord Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999)

This duty requires administrative law judges to make "every reasonable effort to help [the claimant] get medical reports from [his or her] own medical sources." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (quoting 20 C.F.R. § 404.1512(d)); *see also Streeter v. Commissioner of Soc. Sec.*, No. 5:07–CV–858, 2011 WL 1576959, at *3 (N.D.N.Y. Apr. 26, 2011) (Administrative law judge must "make reasonable efforts to obtain the claimant's treating physician report."). And, when evidence in hand is inadequate to determine whether a claimant is disabled, an administrative law judge should re-contact a treating

physician or other medical sources and request additional records. 20 C.F.R. §§ 404.1512(e), 404.1520(c); *see also Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) (when there is an inadequate medical record, an administrative law judge must *sua sponte* seek additional information).[10]

## B. *Determining Residual Functional Capacity*

"Residual functional capacity" refers to what persons can still do in work settings despite physical and/or mental limitations caused by their impairments and related symptoms, such as pain. *See Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). When assessing residual functional capacity, administrative law judges decide whether applicants, notwithstanding their impairments, have physical and mental abilities to perform activities generally required by competitive, remunerative work on a regular and continuing basis. Descriptions and observations of limitations from all sources, including claimants and lay persons are admissible and relevant on this issue. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

When assessing residual functional capacity, administrative law judges identify and evaluate a claimant's limitations relating to specific physical and mental functions that correspond with ordinary work activities . *See* 20 C.F.R. § 404.1545; SSR 96–8p, TITLES II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, 1996 WL 374184, at *1 (SSA July 2, 1996). These

---

[10] A legal duty to develop the record, however, is not infinite. *See Guile v. Barnhart*, No. 5:07-cv-259, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010); *see also* 20 C.F.R. § 404.1512(d) (stating that generally, a complete record contains a "medical history for at least the [twelve] months preceding the month in which" the claimant files his application). And, when evidence in hand is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary, and a determination can be made based upon that evidence. *See* 20 C.F.R. § 404.1520b(a). Stated another way, when there are no "obvious gaps" in the record, there is no duty to seek additional information. *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999).

functions include *physical* abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions, *mental* abilities such as understanding, remembering, carrying out instructions, and responding appropriately to supervision, and *other* abilities that may be affected by impairments, such as seeing, hearing, and the ability to tolerate environmental factors. *See* 20 C.F.R. § 404.1545; *see also* SSR 96–8p, 1996 WL 374184, at *5–6.[11]

Although residual functional capacity determinations are reserved for the Commissioner,[12] administrative law judges are unqualified to assess residual functional capacity on the basis of bare medical findings in instances when there is a relatively high degree of impairment. *See Hazlewood v. Commissioner of Soc. Sec.*, No. 6:12–CV–798 (DNH/ATB), 2013 WL 4039419, at *5 (N.D.N.Y. Aug. 6, 2013) (citing *Walker v. Astrue*, No. 08–CV–828, 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010)).[13] Thus, when medical findings merely diagnose impairments without relating diagnoses to specific residual physical, mental and

---

[11] Social Security Ruling 96-8p cautions that "a failure to first make a function-by-function assessment of the individual's limitations or restrictions *could* result in the adjudicator overlooking some of an individual's limitations or restrictions," which "could lead to an incorrect use of an exertional category to find that the individual is able to do past relevant work" and "an erroneous finding that the individual is not disabled." 1996 WL 374184, at *4.

Nevertheless, failure to conduct an explicit function-by-function analysis regarding various illustrative functions listed in the governing regulation and interpretive ruling is not a *per se* error requiring remand. *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). Rather, "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence." *Id*. Thus, when an administrative law judge addresses all relevant functional limitations, remand is unnecessary. *See id.*

[12] 20 C.F.R. § 404.1527(e)(2).

[13] Administrative law judges sometimes render common-sense judgments about a claimant's functional capacity without a physician's assessment when there is a relatively small degree of impairment. *Hazlewood*, 2013 WL 4039419, at *5 (citations omitted); *see also Walker*, 2010 WL 2629832, at *7 (quoting *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996). Such clearly is not the case here because Kinslow proved a *prima facie* case of disability.

other work-related capacities, an administrative law judge's determination of residual functional capacity without a medical advisor's assessment of those capacities is not supported by substantial evidence. *Id.* Stated another way, when no medical source opinion supports an administrative law judge's residual functional capacity finding, that finding lacks substantial evidentiary support. *See House v. Astrue*, No. 5:11–CV–915 (GLS), 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (citations omitted); *see also Aceto v. Commissioner of Soc. Sec.*, No. 6:08–CV–169 (FJS), 2012 WL 5876640, at *16 (N.D.N.Y. Nov. 20, 2012) (because "the ALJ had nothing more than treatment records and consultative reports to review, he had an affirmative duty to develop the record and request that Plaintiff's treating physicians assess her RFC").

C.   *Application*

Assuming (only *arguendo*) that ALJ Ramos's credibility choices with respect to Kinslow's subjective testimony and divergent medical opinions (given in the worker compensation case) were permissible, the issue remains as to whether opinions expressed by Dr. Carr (who ALJ Ramos found "persuasive" (T. 17)) and by Dr. Ali (to which ALJ Ramos gave "great weight" despite the fact that Dr. Ali neither addressed Kinlsow's exertional capacity or described Kinslow's postural limitations in detail) provide substantial evidence supporting ALJ Ramos's residual functional capacity assessment. The court's duty to make a "searching investigation" requires, therefore, that those opinions be parsed carefully.

Dr. Carr opined that Kinslow can lift up to 20 pounds. Such lifting capacity fits within requirements for light exertional work. Dr. Carr further opined that, even then, Kinslow cannot perform work involving repetitive overhead use of the arms or forceful gripping. This opinion, therefore, provides evidentiary support for ALJ Ramos's limitation that Kinslow not perform

overhead lifting.  And, although attenuated, it also probably supports ALJ Ramos's additional limitation that Kinslow can only occasionally engage in "fingering or other fine manipulative activities with either hand" (although Dr. Carr referred only to "repetitive forceful gripping").

Dr. Ali opined that Kinslow is moderately limited to "activities," but expressly identified only "driving" and "sitting in front of the computer." ALJ Ramos gave this opinion "great weight" and – apparently – extrapolated a limitation that Kinslow can only occasionally engage in unspecified "postural activities."

Residual functional capacity for light work, however, contemplates ability to perform sustained work activities in an ordinary work setting on a regular and continuous basis.  "A 'regular and continuous basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR 96-8, 1996 WL 374184, at *1.  It involves capacity not only to *lift* objects weighing up to 20 pounds, but also capacity to *carry frequently* objects weighing up to 10 pounds.  It requires ability to *stand and walk up to six hours* in a normal work day, or to *sit most of the time with some pushing and pulling of arm-hand or leg-foot controls.  See* SSR 83–10, TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK – THE MEDICAL-VOCATIONAL RULES OF APPENDIX 2, 1983 WL 31251, at *5 (SSA 1983).

Neither Dr. Carr nor Dr. Ali expressed opinions regarding Kinslow's capacities to engage in work at any exertional level on a regular and continuous basis in an ordinary work setting.  Neither opined with respect to Kinslow's capacity to sit, stand, walk, push and pull.  Consequently, their opinions alone do not substantially support ALJ Ramos's residual functional capacity determination.

Given the high degree of deference reviewing courts owe to the Commissioner's expertise, it is appropriate to examine the balance of the medical record to ascertain whether it was sufficiently robust to permit ALJ Ramos to conclude that Kinslow has capacity for the remaining strength and other exertional requirements for a limited range of light work. Examining orthopedist, Dr. Totero's final findings did address Kinslow's ability to lift, carry, push and pull weights, but limited Kinslow's capacity to weights no heavier than 10 to 15 pounds. This is *below* requirements for light work, so it does not cure the deficiency in the evidence from Dr. Carr and Dr. Ali in these respects. Finally, no other medical source expressed an opinion about Kinslow's ability to sit, stand or walk, and none expressed an opinion regarding Kinslow's ability to perform at any exertional level on a sustained basis corresponding to an ordinary work schedule.

In absence of medical source opinion, subjective testimony or credible lay observations from extrinsic sources regarding Kinslow's functional capacities and limitations regarding these additional exertional demands of light work, there was an obvious gap in the record that necessitated further development of the medical record. ALJ Ramos could not supply the remaining elements of his residual functional capacity finding for light work through his own assessments based on bare medical findings, irrespective of whether those assessments appear logical in a general sense.

In these circumstances, it is necessary to remand for lack of substantial evidence supporting the residual functional capacity finding.[14]

## V. Other Points of Error

Since remand is necessary based on the error discussed above, it is unnecessary to address Kinslow's remaining points relating to ALJ Ramos's credibility assessment of subjective testimony and his "framework" application of the grids. Nor is it necessary to address Kinslow's additional argument regarding the first point wherein Kinslow contends that ALJ Ramos "cherry picked" medical opinions without conducting a six-factor analysis for weighting of medical opinion prescribed by 20 C.F.R. § 404.1513 and SSR 06–03p, TITLES II AND XVI: CONSIDERING OPINIONS AND OTHER EVIDENCE FROM SOURCES WHO ARE NOT "ACCEPTABLE MEDICAL SOURCES" IN DISABILITY CLAIMS, 2006 WL 2329939, at *2 (SSA Aug. 9, 2006).

Without expressing an opinion as to whether any of these arguments ultimately would prevail if adjudicated on their merits, the undersigned observes that none is patently frivolous. Accordingly, upon remand the Commissioner should be mindful of them when making a new determination.

---

[14] Harmless error analysis is not called for here. Both the Administrative Procedure Act and the Social Security Act give proponents of administrative actions statutory rights to orders supported by substantial evidence. See 5 U.S.C. § 706(d); 42 U.S.C. § 405(g). Adverse administrative decisions unsupported by substantial evidence clearly affect substantial rights. The Constitution condemns arbitrary and capricious exercise of government power, and, for over a century, American jurisprudence has recognized that administrative facts not fairly supported by evidence are arbitrary and baseless. *Interstate Commerce Comm'n v. Louisville & Nashville R.R. Co.*, 227 U.S. 88, 91 (1913); *see also Rice v. Shalala*, No. 93–1305, 1 F.3d 1234 (Table), 1993 WL 309631, at *5 n. 6 (4th Cir. Aug. 16, 1993) (acknowledging that substantive due process rights are implicated by argument suggesting that Commissioner's decision was not supported by substantial evidence).

## VI. Recommendation

The Commissioner's decision denying disability benefits should be REVERSED and the case REMANDED pursuant to 42 U.S.C. § 405(g), sentence four, for further proceedings in accordance with this recommendation.

## VII. Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the <u>  10  </u> day of <u>    January    </u> 2014.

*[signature: Earl S. Hines]*

Earl S. Hines
United States Magistrate Judge